Carlos CALAMACO, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–81–00492–CR.

Court of Appeals of Texas,
San Antonio.

April 13, 1983.

Discretionary Review Refused
July 20, 1983.

Tony Jimenez, San Antonio, for appellant.

Bill White, Dist. Atty., Mike Sawyer, Mike Granado, Asst. Dist. Attys., San Antonio, for appellee.

Before BUTTS, TIJERINA and DIAL, JJ.

## OPINION

BUTTS, Justice.

This is an appeal from a conviction for the offense of murder. Punishment was assessed, after appellant was found guilty, by the jury at fifteen (15) years' imprisonment. We affirm.

Appellant submitted to the trial court three objections to the charge in one instrument: (1) that there was no evidence or insufficient evidence to justify the submission of the parties charge, (2) that the parties charge shifted and altered the burden of proof as to the essential elements of the offense, and (3) that the parties charge tended to eliminate and dispense with proof of the element of intent relative to the offense charged.

The evidence shows this was a trial of co-defendants, both charged with the shooting death of David Valdez. It is undisputed that Valdez died as the result of a shootout on February 8, 1980, with appellant and four others, the fatal encounter occurring outside an icehouse. The deceased's brother, Jerry Valdez, testified that one of the men pointed a gun at him and fired it, striking him in the arm. He said Carlos Calamaco stood next to Tony Rodriguez and that appellant had a gun in his hand, a long-barrelled pistol. He stated Antonio Valenzuela, the co-defendant, held a short-barrelled weapon, Robert Calamaco had a gun, and a fifth man used a silver-colored gun. He saw the guns "going off" and "fire coming out of them and stuff." "I saw fire coming out of his [appellant's] gun also." The witness was struck by a bullet in the back as he attempted to get up. Valenzuela, the co-defendant, was also firing his gun, according to the testimony of Valdez. He repeated that Carlos Calamaco continued shooting, along with the others, at the time his brother was shot. He said he saw Valenzuela driving the car as it left the scene, a San Antonio icehouse. "I saw Carlos Calamaco in the back on the right back seat with a gun in front of his face like this." He described it as a long-barrelled revolver.

Appellant testified he drove the automobile to a hospital and discovered that someone had placed guns in the seat between him and his wounded brother, Robert. He stated he threw the guns in a trash can outside the hospital. Both appellant and Valenzuela testified that Valenzuela had gone across the street to a store to get change to use an outside telephone and that neither he or the co-defendant participated in the shooting at all. Valenzuela disclaimed any knowledge of guns or use of them by himself or any of the others. The testimony that he was inside the store was refuted by John and Adrian Wong, brothers who worked for their grandfather, the proprietor of the store.

■ The jury is the exclusive judge of the credibility of the witnesses and of the weight to be given their testimony. *Daniels v. State,* 600 S.W.2d 813, 815 (Tex.Cr. App.1980); *LaFoon v. State,* 543 S.W.2d 617, 620 (Tex.Cr.App.1976). The jury may choose to believe or disbelieve any witness. We find the evidence sufficient to justify submission of the parties charge.

■ Appellant relies upon *Zuckerman v. State,* 591 S.W.2d 495 (Tex.Cr.App.1979) and *Zuckerman v. State,* 591 S.W.2d 497 (Tex.Cr.App.1979) to uphold his argument that the court's charge on parties shifted the burden of proof from the State to the appellant. In those cases the charge authorized the jury to convict each appellant on a finding that only his co-defendant committed the offense. It is elementary that a defendant must be found to have committed the offense personally or that he be found to be criminally responsible for the acts of his co-defendant. The *Zuckerman* error is not present in this case. We understand the related argument to be that appellant must have *known* the other person was engaged in knowingly, intentionally committing the unlawful act and must *knowingly* aid, abet, assist and encourage the intentional act of the other. The instant jury charge with its definitions and instructions, as given, afforded this protection to appellant. *See Evans v. State,* 606 S.W.2d 880 (Tex.Cr.App.1980).

The charge to the jury[1] conformed generally with Texas practice, first submitting the abstract principles of law followed by the application of that law to the facts of the case. *Finley v. State,* 527 S.W.2d 553, 555 (Tex.Cr.App.1975). In the present case the trial court first defined "parties" by tracking the statute. Tex.Penal Code Ann. §§ 7.01(a), (b), 7.02(a)(2) (Vernon 1974).

We find that all of the elements of the offense of murder were included in applying the law to the facts of this case. Tex. Penal Code Ann. § 19.02(a)(1) (Vernon 1974). We further find that the evidence supports submission of the jury charge either on the theory of appellant's guilt because of his own acts or because of his responsibility for the acts of his co-defendant or other persons at the scene.

1. The charge on parties:

### III.

Our law provides a person is criminally responsible as a party to an offense if the offense is committed by his own conduct, or by the conduct of another for which he is criminally responsible, or by both. A party to an offense may be charged with commission of the offense.

Mere presence alone will not make a person a party to an offense. A person is criminally responsible for an offense committed by the conduct of another if acting with intent to promote or assist the commission of the offense he solicits, encourages, directs, aids or attempts to aid the other person to commit the offense. . . .

### V.

Therefore, if you further believe from the evidence beyond a reasonable doubt that the defendant, Carlos Calamaco, did, either acting alone or together with another as a party, in Bexar County, Texas, on or about the 8th day of February, A.D., 1980, intentionally or knowingly cause the death of an individual, to-wit: David Valdez, by shooting the said David Valdez with a gun, you will find the defendant guilty of the offense of murder as alleged in the indictment in cause number 80–CR–0984–B.

If you do not so believe, or if you have a reasonable doubt thereof, you will find the defendant not guilty in cause number 80–CR–0984–B.

[The charge on parties which applied the law to the facts in the case against the co-defendant is in paragraph IV.]

Appellant has cited no authority to demonstrate how the substantive charge as submitted shifted the burden of proof as to the substantive elements of the offense of murder. We point out that the legal term "parties" and its defined components do not attain the posture of essential elements of the offense, as does, for instance, the culpable mental state, *Compare Doyle v. State,* 631 S.W.2d 732 (Tex.Cr.App.1982); *Cumbie v. State,* 578 S.W.2d 732 (Tex.Cr.App.1979). We overrule the contention.

In still the same ground of error appellant questions that sufficient proof could be made because the jury charge on parties eliminated the necessity of proof by the State of intent to commit murder. He argues there should have been separate findings that appellant committed the act or that another committed the act of killing. We do not agree. It is permissible for the jury in determining whether appellant participated as a party, to look to events occurring before, during, and after the commission of the offense as well as to actions of the parties which show an understanding and common design to murder the deceased. *Barron v. State,* 566 S.W.2d 929, 931 (Tex. Cr.App.1978), where the defendant accompanied the shooter to the scene and stood 25 feet away from him and drove him from the scene after the shooting. The jury charge in that case tracked § 7.02(a)(2), *supra,* and that court found the evidence sufficient to support the conviction.

A trial court may charge the jury on the law of parties even though there is no such allegation in the indictment. *English v. State,* 592 S.W.2d 949, 955 (Tex.Cr. App.1980), *cert. denied,* 449 U.S. 891, 101 S.Ct. 254, 66 L.Ed.2d 120; *Pitts v. State,* 569 S.W.2d 898, 900 (Tex.Cr.App.1978). In this case there was sufficient evidence to establish appellant's intent to commit the offense as the primary actor as well as to commit the offense as a party. We hold the theory of appellant's guilt as a party to the commission of the offense of murder charged by the indictment was properly submitted to the jury as was the theory of appellant's guilt as the primary actor.

The other contentions by appellant in this same ground of error are multifarious, Tex. Code Crim.Proc.Ann. art. 40.09 (Vernon Supp. 1982–83). In additon they do not comport with any objection raised at trial. *Frank v. State,* 558 S.W.2d 12, 16 (Tex. Cr.App.1977). However, we have examined the jury charge for fundamental error, and we find none. *Cumbie v. State, supra.* The first ground of error is overruled.

Appellant's second ground of error is that hearsay evidence of conduct and statements made outside the appellant's presence was wrongfully admitted in evidence. Jerry Valdez testified about the conversation his deceased brother had with appellant's brother, Robert, also deceased at the time of trial [those circumstances being unrelated to this case]. The conversation concerned the earlier death of the Calamacos' younger brother, David, allegedly caused by an undercover narcotics agent, Lorenzo Sanchez, known by the nickname of "Baby." Apparently, the deceased Valdez's nickname was "Babyface." The statements indicating that Robert was looking for "Baby" were made about 5:30 or 6:00 p.m. on February 8, 1980, at the ice house where the Valdez brothers worked; appellant arrived in response to a telephone call about 8:30 p.m. The shootout occurred after 9:00 p.m.

The State argues the statements were correctly admitted not for the truth of the matters stated but as proof that the statements had been made, an exception to the hearsay rule. *Nixon v. State,* 587 S.W.2d 709, 711 (Tex.Cr.App.1979). Appellant's reliance on *Love v. State,* 581 S.W.2d 679 (Tex.Cr.App.1979), is misplaced. The deceased there was the wife of the defendant, and her statements that her husband was going to kill her were made outside the presence of the defendant. Such statements have been held inadmissible in the prosecution for the murder of the spouse. *Love v. State,* 581 S.W.2d at 681, and cases there cited.

Unlike those cases, in the instant case the circumstances also permitted introduction

of the statements to show the state of mind of the deceased. Tex.Penal Code Ann. § 19.06 (Vernon 1974). The jury could choose to believe or not to believe that the deceased was mistakenly identified by the Calamacos as the killer of their brother and feared for his life. We hold the statements were not hearsay and could be admitted not for showing the truth of the matter asserted, but rather, that the statements were made, and further to show the state of mind of the deceased. Evidence of words spoken during the events surrounding a killing constitutes part of the "circumstances surrounding the killing." § 19.06, *supra.*

Furthermore, apart from the express rule of § 19.06, the general rule is that an offense does not occur in a vacuum and it is proper to admit evidence of the surrounding facts. *Nixon v. State, supra* at 711. We overrule the ground of error.

In his third and fourth grounds of error, appellant complains that proper predicate was not established at the punishment phase when two San Antonio police officers testified that appellant's reputation was bad. He asserts a mistrial should have been granted.

The prosecutor questioned Officer Andy Vaquera:

Q: Let me ask you if you know a person by the name of Carlos Calamaco?

A: Yes, I do.

* * * * * *

Q: Do you know the general reputation of Carlos Calamaco within the community in which he resides as being a peaceful and law-abiding citizen?

A: Yes.

Q: Is that reputation good or bad?

A: Bad, sir.

[The same questions were asked and same answers elicited regarding the co-defendant Valanzuela.]

Q: How long have you known Carlos Calamaco?

A: Since the mid '70's, '74 or '75.

Q: Did you participate in the investigation and filing of this particular case here on trial right now?

A: No, not in the filing of the case, no, sir.

[Passed the witness]

* * * * * *

Appellant did not question the officer's qualifications on voir dire prior to his answer that the reputation was bad, however, he did cross-examine the witness. At one point the officer answered his "own personal knowledge" was the basis for his conclusion as to appellant's reputation in the community. Then, in response to the State's question, "In determining the reputation of Carlos Calamaco, did you talk to people?", he answered "Yes." In response to ". . . who did you talk to?" he replied, "People in the community." and, "Around 1975."

■ At the punishment phase of a trial, the reputation of the defendant is in issue and the State may introduce reputation evidence. *Hoffert v. State,* 623 S.W.2d 141, 147 (Tex.Cr.App.1981). Tex.Code Crim.Proc.Ann. art. 37.07, § 3(a) (Vernon 1981). Although the officer's qualifications to know appellant's general reputation in the community in this case may have been better delineated, we cannot conclude that he was shown to have been disqualified by the appellant. *Gholson v. State,* 542 S.W.2d 395, 402 (Tex.Cr.App.1976).

■ The second officer who testified based his statement of appellant's bad reputation on information received from officers who investigated or were otherwise connected with the case on trial, as well as by talking with some other police officers in the community. On defense motion, the cautious trial court ordered the testimony struck and instructed the jury not to consider it for any purpose. Appellant urges his motion for mistrial should have been granted. We believe the error, if any, in admitting the evidence was cured by the prompt instruction to disregard and to strike the testimony of the second officer. *Lovilotte v. State,* 550 S.W.2d 75, 77 (Tex. Cr.App.1977). Although the second officer's testimony was not made firm before the trial court excluded it, he did state that

he had also obtained his information from "other police officers." *Watson v. State,* 605 S.W.2d 877, 884–85 (Tex.Cr.App.1980). No error is shown by the trial court's refusal to grant a mistrial. The grounds of error are overruled.

In his fifth ground of error appellant attacks the sufficiency of the evidence to support his conviction because the trial court admitted hearsay evidence. By testimony of the investigating police officer the State sought to prove that appellant was the person who threw three guns in a trash can at the "Green" hospital where his brother and two others received emergency treatment. Appellant stipulated the guns were in the trash can. The testimony of the officer repeated the security guard's description of the man who "dumped the bodies out of the car and put the weapons in the garbage can." However, the security guard testified thereafter he observed "the subject" dump something in the can. Moreover, on direct examination appellant himself recounted the happening in greater detail and admitted placing the guns in the can. We perceive no error. Assuming arguendo the evidence was inadmissible, generally inadmissible evidence erroneously admitted will not require reversal if the accused testifies about the same facts and admits the truth of the testimony to which he originally objected. *Jackson v. State,* 548 S.W.2d 685, 694 (Tex.Cr.App.1977). This was not rebuttal evidence as in *Nicholas v. State,* 502 S.W.2d 169 (Tex.Cr.App. 1973). In addition, the testimony of the security guard was properly admitted. Thus, error in admission of the officer's testimony, if any, was rendered harmless. The ground of error is without merit.

Appellant, in ground of error six, challenges the sufficiency of the evidence, claiming the circumstances amounted only to a "strong suspicion" and "mere probability" of his participation in the offense. After the rendition of the verdict by the jury and its approval by the trial judge, it is the duty of the reviewing court, in testing the sufficiency of the evidence, to view it in the light most favorable to the jury's verdict.

*Darrington v. State,* 623 S.W.2d 414, 415 (Tex.Cr.App.1981); *Rohlfing v. State,* 612 S.W.2d 598, 600 (Tex.Cr.App.1981); *Johnson v. State,* 93 Tex.Cr.R. 150, 245 S.W. 710, 711 (1922). On review, the verdict will be sustained if there is any evidence which, if believed, establishes the guilt of the accused. *Banks v. State,* 510 S.W.2d 592, 595 (Tex.Cr.App.1974). The jury may accept or reject testimony of any witness. *Thomas v. State,* 605 S.W.2d 290, 292 (Tex.Cr.App. 1980). We have reviewed the evidence and draw from it the testimony of Jerry Valdez, placing appellant at the shootout and participating in it, the testimony of two other employees of the icehouse confirming appellant's presence in the building and that he went outside with the others just before gunfire erupted, the testimony of appellant that he went to the icehouse at the instigation of his brother and that he disposed of the guns (a nine-shot Harrington revolver, a Richardson .22 caliber revolver, and a Spanish-made Fiberou .380 semi-automatic pistol) by putting them in a trash can at the hospital. The co-defendant also testified that appellant was present at the scene, although he denied that either he or appellant participated in the shooting. The jury was free to believe or disbelieve the exculpatory statements of appellant and Valenzuela. *Minx v. State,* 615 S.W.2d 748, 749 (Tex.Cr.App.1981). *Thomas v. State, supra* at 292. While it is true that the State did not prove which participant in the shootout fired the fatal bullet, there was direct evidence that appellant was one of the shooters. In viewing the evidence in the light most favorable to the verdict, we find the evidence sufficient to support that finding by the jury.

Appellant, in his seventh ground of error, contends that the trial court erred by not charging the jury on circumstantial evidence as he requested. The decision of *Hankins v. State,* 646 S.W.2d 191 (Tex.Cr. App.1983), does away with the validity of a request by a defendant for a circumstantial evidence charge in the state courts of Texas. Even though the State may base its case entirely on circumstantial evidence, it

is not error to refuse to submit the charge. *Ransonette v. State,* 550 S.W.2d 36, 43 (Tex. Cr.App.1977). The ground of error is without merit.

█ In his final ground of error appellant argues that the police officer who testified first regarding the description of the person who unloaded the injured persons and put the guns in the trash can bolstered the unimpeached testimony of the security guard who testified after that. Initially, we note the objections urged at trial to the police officer's testimony were based on hearsay and the "best evidence rule." An objection to bolstering of the state's witness by the State was thereby waived; raising a different objection on appeal did not preserve the error, if any. *McIlveen v. State,* 559 S.W.2d 815, 822 (Tex.Cr.App.1977).

In overruling this contention we add that the testimony of the first officer is not to be considered bolstering. *Lyons v. State,* 388 S.W.2d 950 (Tex.Cr.App.1965), and other bolstering-of-witnesses cases cited by appellant, such as *Adams v. State,* 514 S.W.2d 262 (Tex.Cr.App.1974); *Acker v. State,* 421 S.W.2d 398 (Tex.Cr.App.1967); *Brown v. State,* 403 S.W.2d 411 (Tex.Cr.App.1966), do not apply in this case.

The judgment is affirmed.

TIJERINA, Justice, dissenting.

I dissent. Appellant's ground of error number one contends the trial court erroneously denied his written objection to the court's charge on the law of parties. Because I believe this question disposes of the entire appeal, the pertinent parts of the charge are set out.

The definitional portion of the charge defines and sets out the essential elements of the law of parties as follows:

> Our law provides a person is criminally responsible as a party to an offense if the offense is committed by his own conduct, or by the conduct of another for which he is criminally responsible, or by both. Each party to an offense may be charged with commission of the offense.

Mere presence alone will not make a person a party to an offense. A person is criminally responsible for an offense committed by the conduct of another if acting with intent to promote or assist the commission of the offense he solicits, encourages, directs, aids or attempts to aid the other person to commit the offense. In applying the law to the facts, the court charged,

> Therefore, if you believe from the evidence beyond a reasonable doubt that the defendant, Carlos Calamaco, did, either acting alone or *together with another as a party,* in Bexar County, Texas, on or about the 8th day of February A.D., 1980, intentionally or knowingly cause the death of an individual, to wit: David Valdez, by shooting the said David Valdez with a gun, you will find the defendant guilty of the offense of murder as alleged in the indictment in Cause No. 80–CR–0984–B. If you do not so believe, or if you have a reasonable doubt thereof, you will find the defendant not guilty. (Emphasis added.)

Appellant contends that the court failed to properly apply the law to the facts and that the omission in the charge of the essential elements of the law of parties was fundamental error. Appellant filed written objections to the court's charge on the issue of parties and again challenged that submission in his motion for new trial.

Tex.Penal Code Ann. art. 7.02(a)(2) (Vernon 1974) states:

> (A) A person is criminally responsible for an offense committed by the conduct of another if:
> (2) Acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids or attempts to aid the other person to commit the offense.

It is apparent that the trial court, in applying the law to the facts, failed to include the essential elements of the law of parties. The jury was not instructed to find that appellant was criminally responsible for the act of another if, acting with intent to promote or assist in the commission of the

offense, he solicited, encouraged, directed, aided or attempted to aid the other person to commit the offense. *See* 1 Branch's Texas Annotated Penal Statutes 257 (3d ed. 1974). The essential elements prescribed by Tex.Penal Code Ann. art. 7.02(a)(2) (Vernon 1974) establish the criminal responsibility for conduct as a party. A submission incorporating these elements would have shown the jury in an understandable way precisely what facts they had to find in order to be authorized to sustain the State's theory of defendant's guilt as a party. *See* Foreman & Jones, *Submitting the Law of Parties in a Texas Criminal Prosecution,* 33 Baylor L.Rev. 267, 270 (1981). It appears that the court's charge failed to focus the jury's deliberation on the essential elements of the law of parties. "[I]f the evidence introduced upon the trial of the case shows, or *raises an issue,* that the conduct of the defendant then upon trial is not sufficient, in and of itself, to sustain a conviction, the State's case rests upon the law of principals and is dependent, at least in part, upon the conduct of another. In such a case, the law of principals must be submitted and made applicable to the facts of the case." *McCuin v. State,* 505 S.W.2d 827, 830 (Tex.Cr.App. 1974). (Emphasis added).

A jury charge is fundamentally defective if it omits an essential element of the offense. *See Cumbie v. State,* 578 S.W.2d 732 (Tex.Cr.App.1979); *Bradley v. State,* 560 S.W.2d 650 (Tex.Cr.App.1978). This case, however, is controlled by the authoritative opinion in *Doyle v. State,* 631 S.W.2d 732 (Tex.Cr.App.1982). "We believe that it logically follows that when a trial court omits from the application paragraph of the charge required elements of an offense, this also will render a conviction fatally defective. To rule otherwise, we believe, would permit and allow our trial courts to state in a jury charge abstract definitions of legal terms and principles of law, without the necessity of applying those principles and terms to the very facts of the case ... abstract definitions of legal terms ... in a jury charge ... are like words found in a dictionary. They are useless unless correct-

ly used in a sentence." *Id.* at 735. The Court further stated the general rule that a charge should be read as a whole did apply, but stated, "[t]he general rule is not applicable, however, when an entire element of the offense is omitted from the application paragraph." *Id.* at 738. *Cf. Antunez v. State,* 647 S.W.2d 649 (Tex.Cr.App.1983) (court's charge on robbery left jury to speculate about which acts on part of defendant would constitute robbery).

I would hold that the omission of the essential elements of the law of parties in the application of the law to facts paragraph of the jury charge was fundamental error and that the failure of the trial court to apply the law to the facts denied appellant a fair and impartial trial. The judgment should be reversed.